*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0284P (6th Cir.)
File Name:  01a0284p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DANNY L. SANFORD and
COMELLA SANFORD,
　　　　*Plaintiffs-Appellees,*

　　　*v.*

HARVARD INDUSTRIES, INC.,
HAYES-ALBION COMPANY,
and HARVARD INDUSTRIES'
JACKSON PLANT HOURLY
RATE EMPLOYEES' PENSION
PLAN,
　　　　*Defendants-Appellants.*

No. 00-1193

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 96-60442—George C. Steeh, District Judge.

Argued:  August 1, 2001

Decided and Filed:  August 24, 2001

Before:  CLAY, GILMAN, and FARRIS, Circuit Judges.[*]

———————————

[*]The Honorable Jerome Farris, Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

1

procedures set forth in the plan.  As such, the court did not err in remanding the factual issue of Sanford's eligibility for benefits to the Board and dismissing Harvard's counterclaim for reimbursement.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

### COUNSEL

**ARGUED:** Bruce G. Davis, DYKEMA GOSSETT, Lansing, Michigan, for Appellants.  George J. Brannick, Jackson, Michigan, for Appellees.  **ON BRIEF:**  Bruce G. Davis, DYKEMA GOSSETT, Lansing, Michigan, for Appellants. George J. Brannick, Jackson, Michigan, for Appellees.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge.  On July 14, 1995, Danny L. Sanford took early retirement from his employer, Harvard Industries, Inc., in order to secure certain health benefits under an expiring collective bargaining agreement (CBA).    Harvard's  Central  Board  of Administration (the Board) determined that Sanford qualified for early retirement and approved his benefits accordingly. Four months later, Harvard concluded that Sanford had been mistakenly granted early retirement.  It therefore informed Sanford that he would have to return to work in order to qualify for retirement benefits, and that it was revoking the benefits he had started to receive under the old CBA.  Sanford refused to return to work, and instead sued Harvard.

The district court sent the case back to the Board for a determination of whether Sanford was in fact qualified on July 14, 1995 for early retirement, and in the interim ordered Harvard to reinstate Sanford's benefits.  Harvard appeals, arguing that the district court (1) erred by failing to accord deferential review to Harvard's decision regarding the status of Sanford's retirement benefits, (2) incorrectly concluded that Harvard violated ERISA's notice requirements, and (3) erred by ordering Harvard to reinstate Sanford's benefits pending a decision by the Board.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

eligibility for early retirement in 1995 be remanded to the Board for a hearing and decision. Second, it ordered that Harvard reinstate the benefits to Sanford that were improperly rescinded in violation of the plan procedures. Harvard contends that the district court did not have the authority to order the reinstatement of Sanford's benefits.

Harvard cites *Anderson v. Mrs. Grisson's Salad's Inc*, No. 99-5207, 2000 WL 875365 (6th Cir. June 19, 2000) (unpublished table decision), to support its position. Though unpublished, *Anderson* conveniently summarizes several cases in noting that "the Sixth Circuit has consistently held that violations of the procedural sections of ERISA do not give rise to claims for substantive damages." *Id.* at *3. *Anderson* is of no help to Harvard, however, because the district court in the present case did *not* determine that Sanford's claim to benefits is based on Harvard's failure to comply with ERISA's notice requirements. Instead, it determined that Sanford's claim is based on the Board's initial approval of his early retirement under § 9.3 of the plan, and the order to reinstate Sanford's benefits is in fact premised on the district court's conclusion that the Board's decision made in July of 1995 has never been properly revoked. Thus Harvard's procedural violation is not the reason that Sanford's benefits commenced, but is the reason that they should continue until a decision regarding the potential revocation of Sanford's benefits has been properly determined in compliance with the plan's provisions.

Additionally, Harvard argues that the district court erred in dismissing its counterclaim for the reimbursement of the benefits paid to Sanford between November of 1995 and September of 1997, this being the time between Harvard's notice of revocation of benefits to Sanford and the time that it actually stopped disbursing payments to him. We find no error in the district court's dismissal of Harvard's counterclaim. The district court found that the Board's original decision that Sanford was eligible for benefits is still in effect and was not properly revoked in accordance with the

## I. BACKGROUND

Sanford worked for Harvard and its predecessor, the Hayes-Albion Company, at the company's plant in Jackson, Michigan from September 2, 1964 until he retired on July 14, 1995. The CBA then in effect between Harvard and Local 327 of the UAW was set to expire on July 15, 1995. All eligible employees who retired before that date were entitled to employer-paid health insurance coverage for themselves and their dependents for the remainder of their lives. Employees who retired after that date were not entitled to lifetime health insurance coverage for their dependents.

Sanford applied for "thirty and out" early retirement on July 11, 1995 in order to secure the health insurance benefits for his wife, Comella Sanford. Employees who were less than 65 years old had to have accumulated 30 years of "credited service," rather than 30 years of chronological service, in order to qualify for early retirement. Such service credits were based in part on whether work was performed as an hourly or a salaried employee. Because Sanford was only 50 years old in 1995, he was required to have 30 years of credited service.

Barbara McKinnon, Harvard's Manager of Human Resources for Salaried Administration, and Audrey Van Buren, the Benefits Account Supervisor, were responsible for processing retirement applications at the Jackson plant. Harvard claims that 35 plant employees applied to retire before the changeover deadline on July 15, 1995, an unusually high number of applications to process at one time. McKinnon and Van Buren reviewed Sanford's early retirement application and approved it, as did the Board. Accordingly, Sanford retired on July 14, 1995, began receiving $439.63 per month in pension benefits, and received health insurance coverage for himself and his wife.

Harvard conducted an audit of its personnel files approximately four months after Sanford retired. It

determined that McKinnon and Van Buren had mistakenly concluded that Sanford was eligible for early retirement. According to Harvard's calculation, Sanford had accumulated only 29.3 years of credited service. Harvard asserts that Sanford should not have received a full year of credited service as an hourly employee in 1964, 1970, 1971, and 1975 because he did not work at least 1,700 hours in those years as required by the Jackson Plant Hourly Rate Pension Plan (the plan). As such, Harvard contends that Sanford would never have been eligible to receive the early retirement benefits under the old CBA. Sanford contests Harvard's calculation of his credited service. In particular, he challenges Harvard's calculation of his service in 1989, the year in which he transferred from a salaried employee to an hourly employee, and 1995, the year that he was on workers' compensation leave for a substantial portion of the time.

The record also reveals that Mel West, an employee at the Jackson plant, filed a union grievance challenging Harvard's approval of Sanford's early retirement. This grievance prompted a meeting at the Jackson plant in late November of 1995 to discuss Sanford's retirement and benefits status. In attendance at this meeting were plan representatives from Harvard's corporate headquarters in Tampa, Florida, international union representatives, the local bargaining committee, and a majority if not all of the Board members. The Tampa office had already sent an official memorandum to McKinnon and Lee Ferree, the plant manager, informing them that they should advise Sanford that there was an error in calculating his retirement eligibility and that Harvard was therefore rescinding his benefits.

On November 28, 1995, McKinnon and Ferree met with Sanford to inform him of the personnel department's computing mistake. Harvard also told Sanford that he would no longer receive pension benefits under the plan and that he would need to work an additional 510 hours to qualify for early retirement. Sanford was informed, however, that he would be credited with pension credit and seniority for the

procedure available to him, and that Sanford was therefore denied a reasonable opportunity to obtain a "full and fair review" as provided by 29 U.S.C. § 1133.

Harvard contends that it provided Sanford with sufficient information for him to understand the reasons behind its revocation of his benefits. Furthermore, it claims that because Sanford had attended a meeting with Ferree and McKinnon, had received a follow-up telephone call, and was sent a letter outlining Harvard's position, Harvard should be found to have substantially complied with the ERISA requirements. *See Kent v. Union of Omaha Mut. Life Ins. Co.*, 96 F.3d 803, 807-08 (6th Cir. 1996) (adopting the rule in our circuit that plan administrators need only substantially comply with ERISA notice requirements).

We find no error in the district court's conclusion that Harvard did not adequately comply with ERISA's notice requirements. Although the actions taken by Harvard were sufficient to specifically explain why it was rescinding Sanford's benefits, these actions did not include information advising Sanford of the steps he was required to take in order to obtain a full and fair review of Harvard's adverse decision. Nor is this analysis altered by the fact that Sanford notified Harvard that he was consulting a lawyer regarding his benefit status.

**D. The district court did not err in ordering Harvard to reinstate Sanford's benefits pending a decision on the issue of Sanford's retirement eligibility by the Board**

Harvard next contends that the district court erred by remedying a procedural violation with a substantive remedy, namely, the reinstatement of benefits to Sanford. The district court concluded that the Board's initial decision that Sanford was entitled to benefits was duly processed under § 9.3 of the plan and has never been properly revoked. To remedy this situation, the court first ordered that the issue of Sanford's

prepared to answer questions about how its pension plan, which is governed by ERISA, operates.

We conclude that the district court did not err in ordering that Sanford's case be remanded to the Board for a decision on whether Sanford is indeed eligible for the benefits provided by the expired CBA. Both parties have raised arguments regarding this question throughout the litigation in federal court. We have expressly refrained, however, from examining the merits of the dispute concerning Sanford's eligibility for early retirement. The district court did so as well, because it determined that "the district court should not consider evidence outside the administrative record for the first time but should allow the plan fiduciary to do so in keeping with ERISA's policy [that] the fiduciaries are primarily responsible for claims processing." As such, we stress that the litigation in federal court has not foreclosed the parties from raising whatever arguments they wish regarding Sanford's eligibility for benefits on remand to the Board.

**C.   The district court did not err in finding that Harvard violated ERISA's notice requirements**

Harvard next challenges the district court's conclusion that the company violated ERISA regulations by not providing Sanford with sufficient notice before revoking his benefits. ERISA mandates that every employee benefit plan shall:

   (1)   provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

   (2)   afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The district court concluded that Harvard failed to provide Sanford with adequate notice of the appeals

entire time period between his mistaken retirement and his return to work, and that he would be compensated for any wage loss he might have incurred as a result of Harvard's error. Finally, Harvard told Sanford that he would be eligible for pension benefits once he had completed enough work to qualify for early retirement, but that his wife would not receive dependent health insurance coverage because the deadline for the old CBA had passed. Sanford received additional notices of Harvard's position through a follow-up telephone call on December 1, 1995 and in writing on December 21, 1995. Harvard nevertheless continued to pay Sanford his monthly pension benefit until September of 1997.

Sanford refused to return to work. Instead, he and his wife filed suit against Harvard on December 29, 1995 in a Michigan state court, seeking the reinstatement of his benefits. Harvard removed the case to the United States District Court for the Eastern District of Michigan based on preemption under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, and filed a counterclaim seeking reimbursement of the pension benefits erroneously paid. In May of 1996, Harvard filed its first motion for summary judgment, which the district court summarily denied based on the need for further discovery. Harvard then filed a second motion for summary judgment in March of 1997. The district court denied this summary judgment motion as well. It did so without prejudice because of pending bankruptcy proceedings against Harvard.

Sanford's case was then transferred to a different judge within the district and was reopened in 1999 after appropriate proceedings in the bankruptcy court. Harvard filed a renewed motion for summary judgment. The district court construed this motion as a motion for entry of judgment affirming Harvard's decision to deny Sanford's claim for benefits. As such, the district court concluded that a question of fact remained as to whether Sanford was entitled to the benefits. It therefore denied Harvard's motion on August 25, 1999.

After hearing testimony from the parties on October 13, 1999 and January 11, 2000, the district court determined that Harvard had rescinded Sanford's benefits in contravention of both ERISA requirements and the plan procedures, and that Harvard should therefore reinstate Sanford's benefits. Given the ambiguities in the administrative record regarding Sanford's eligibility for early retirement, however, the district court refrained from rendering a factual determination on this issue. It instead dismissed Harvard's counterclaim and remanded Sanford's benefits claim to the Board.

Harvard timely appealed the district court's judgment and order. It argues that the district court erred by reviewing the decision to rescind Sanford's benefits de novo rather than determining whether that decision was arbitrary and capricious under a more deferential standard of review. Furthermore, Harvard claims that several of the district court's factual findings are clearly erroneous.

## II.  ANALYSIS

### A.  Standard of review

We will not set aside the district court's findings of fact unless we conclude that they are clearly erroneous. *See Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 938 (6th Cir. 1997). A district court's factual findings are clearly erroneous if, based on the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1067 (6th Cir. 1994) (citations and internal quotation marks omitted). We review the district court's conclusions of law de novo. *See Davies*, 128 F.3d at 938. In particular, we determine de novo which standard of review should be applied when reviewing a plan administrator's decision governed by ERISA. *See Whisman v. Robbins*, 55 F.3d 1140, 1143 (6th Cir. 1995).

*Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995) (holding that a federal court reviews de novo a decision to revoke benefits when that decision is made by an unauthorized body), and by the First Circuit in *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584 (1st Cir. 1993) (same). The logic behind these decisions is that deferential review under the "arbitrary and capricious" standard is merited for decisions regarding benefits when they are made in compliance with plan procedures. When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision, however, this deferential review is not warranted. *See Sharkey*, 70 F.3d at 229; *Rodriguez-Abreu*, 986 F.2d at 584.

Harvard responds by contending that the only issues properly before the district court were whether Sanford was in fact eligible for early retirement in July of 1995 and whether Harvard's decision to rescind his benefits was arbitrary and capricious, issues that were set forth in the joint pretrial order. Accordingly, Harvard maintains that the district court based its determination on an issue that was not properly before it. Harvard cites *MBI Motor Co., Inc. v. Lotus/East, Inc.*, 506 F.2d 709 (6th Cir. 1974), to support its position. In *MBI*, this court vacated the judgment of the district court because its decision was based on the theory of an implied warranty of merchantability that had not been raised by either party, whereas the entire bench trial involved the issue of whether the defendant had misrepresented the condition of certain cars that the defendant had sold to the plaintiff. *See id.* at 710-13.

Harvard has no comparable basis to cry foul. The district court determined that Harvard failed to comply with the procedures set forth in § 9 of the plan in revoking Sanford's benefits, a determination made after the court conducted a bench trial on the issue of whether Sanford was eligible for early retirement. Furthermore, Harvard cannot remove Sanford's case to federal court on the basis of ERISA preemption and then claim in good faith that it was not

Ferree claims that he, McKinnon, Sanford, and the union president met to discuss Harvard's revocation of Sanford's benefits. This meeting occurred on November 28, 1995. Shortly thereafter, Ferree testified that a meeting was held on the union grievance filed by one of Sanford's coworkers. Approximately 15 people were present at that meeting on the union grievance, including most if not all of the members of the Board. Ferree maintained that Harvard had already decided to rescind Sanford's benefits, and that those in attendance discussed what steps should be taken to handle the situation. Sanford was unaware of the union grievance meeting. Finally, Ferree admitted that the meeting was held in lieu of the procedures for appealing benefit decisions as set forth in the plan. He further testified that he had suggested at the meeting that Harvard follow the appeal procedures set forth in § 9 of the plan, but that those in attendance disregarded his suggestion.

Given the complicated chain of events and the confusion as to the proper plan procedures, we are not left with the "definite and firm conviction that a mistake has been committed" by the district court. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1067 (6th Cir. 1994) (setting forth the test for whether a factual finding by the district court is clearly erroneous). We therefore conclude that the district court committed no clear error in determining that Harvard did not comply with the proper benefit denial and appeal procedures that are set forth in the plan.

Having identified no clear error in the district court's finding that Harvard did not comply with the plan procedures in rescinding Sanford's benefits, we also hold that the court did not err by reviewing Harvard's decision de novo, rather than under the more deferential "arbitrary and capricious" standard. Our circuit has not previously addressed the standard of review applicable to a decision to revoke benefits when that decision is made by a body other than the one authorized by the procedures set forth in a benefits plan. We adopt the view espoused by the Second Circuit in *Sharkey v.*

## B.  The district court did not err in reviewing Harvard's decision de novo

This case hinges upon the district court's determination that Harvard rescinded Sanford's benefits in contravention of both ERISA requirements and the plan procedures. The pension plan in question is one that grants discretionary authority to the Board to determine an employee's eligibility for benefits. Section 9.1 of the plan provides in pertinent part as follows:

The Employer shall be the Plan Administrator for purposes of [ERISA], but the responsibility for carrying out the provisions thereof shall be vested in a central Board of Administration hereinafter referred to as the Board, composed of six members. Three of the members shall be appointed by the Union and three shall be appointed by the Employer. Each member of the Board shall have an alternate. In the event a member is absent from a meeting of the Board, his alternate may attend and when in attendance shall exercise the duties of the member. Either the Employer or the Union at any time may remove a member or alternate appointed by it and may appoint a member or alternate to fill any vacancy among members or alternated [sic] appointed by it.

No person shall act as a member of the Board of Administration or as an alternate for such member unless notice of his appointment has been given in writing by the party making the appointment to the other party.

Section 9.6(e) grants the Board discretion to make determinations on benefits eligibility: "The Board shall have . . . the powers and duties . . . [t]o make determinations as to the rights of any Employees applying for or receiving retirement benefits, and to afford any such individual dissatisfied with any such determinations the right to a hearing thereon." Finally, § 9.3 provides that "[d]ecisions of the Board shall be by a majority of the votes cast. All decisions of the Board, within the scope of its responsibilities . . . shall be final and binding . . . but any . . . person shall

have the right to appeal in accordance with [the plan's provisions]."

As a general principle of ERISA law, federal courts review a plan administrator's denial of benefits de novo, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When a plan administrator has discretionary authority to determine benefits, we will review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).

The district court concluded that § 9.6(e) of Harvard's plan specifically clothes the Board with discretionary authority to decide benefits eligibility. Nevertheless, the court determined that it was not the Board that denied Sanford his benefits, but rather the company at a meeting prompted by a union grievance held under the auspices of the CBA. This contravened the procedures set forth in § 9 of the plan. In the words of the district court:

> The union grievance was heard based on procedures spelled out in the CBA, not in accordance with requirements for an appeal under the Plan. No formal appeal under the Plan was ever heard. Sanford was never notified of the meeting with disgruntled union members nor was he afforded the opportunity to attend the meeting or even to present evidence on his behalf. No meeting of the Board ever occurred. [Harvard claims] that most members of the Board were present at the union meeting, but this does not alter the fact that no formal appeal as required under the Plan ever took place. In order to satisfy the disgruntled employees denied an early retirement, [Harvard] unilaterally rescinded Sanford's retirement.

Having ascertained that the decision to revoke Sanford's benefits was made by an unauthorized body and not by the Board, the district court concluded that it was appropriate to review Harvard's denial of benefits de novo. It relied on *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995) (holding that "[w]here an unauthorized party makes the determination, a denial of plan benefits is reviewed under the de novo standard"), and *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584 (1st Cir. 1993) (same).

On appeal, Harvard claims that the district court erred by failing to review the company's decision to revoke Sanford's benefits under the deferential "arbitrary and capricious" standard. It argues that the district court elevated form over substance in its factual determination that the meeting at which Harvard decided to revoke Sanford's benefits was a hearing on a union grievance and not an authorized procedure for determining benefits eligibility as set forth in § 9 of the plan. Harvard's main contention on appeal, therefore, is that the district court's factual findings were clearly erroneous. Had the district court applied the deferential "arbitrary and capricious" standard of review, Harvard maintains that the court would have upheld the company's decision to revoke Sanford's benefits.

Based on the record before us, we conclude that the district court did not commit clear error in making the factual determination that Harvard failed to follow proper procedures in accordance with the plan when the company decided to revoke Sanford's benefits. The testimony of Lee Ferree, the Jackson plant manager in 1995, provides evidence of Harvard's decision-making process. According to Ferree, Harvard's corporate headquarters in Tampa, Florida determined that a mistake had been made in granting Sanford early retirement and had decided to rescind Sanford's benefits. A memorandum was sent from Harvard's headquarters to Ferree and McKinnon, Harvard's Human Resources Manager in Jackson, instructing them to advise Sanford of the mistake.