File Name: 08a0746n.06

Filed: December 5, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Nos. 07-1367, 07-1794

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

GEORGE M. SMILJANICH,

      Plaintiff-Appellee,

v.

GENERAL MOTORS CORPORATION,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

                                 /

BEFORE:    MARTIN, COLE, and ROGERS, Circuit Judges.

      **BOYCE F. MARTIN, JR., Circuit Judge.**  General Motors appeals the district court's judgment in favor of George Smiljanich on a theory of equitable estoppel and its award of attorneys' fees. We affirm the district court's decision on Smiljanich's equitable estoppel claim, and reverse the grant of attorneys' fees for services performed prior to June 22, 2006.

I.

      George Smiljanich began working for General Motors Corporation on March 31, 1977. From the mid-1980s until August 31, 1998, Mr. Smiljanich was a senior manufacturing engineer for GM's Delphi Chassis Systems Coil Spring Operation. GM sold its Delphi Chassis unit effective August 31, 1998. Smiljanich was offered employment with the acquiring company, Chasco Systems, Inc.,

and he accepted. Smiljanich did not have the option of remaining with GM; the company prohibited him from transferring to any other GM job. Smiljanich's separation from GM was classified by the company as "special separation" due to "sale of activity."

Under normal circumstances when employees leave GM, they lose their credited service with the company and thus their eligibility for retirement benefits tied to their length of service.[1] However, for employees that left GM through a "special separation," it was GM's policy to "bridge" the dates of credited service over a separation of less than 12 months so that such employees would not lose their accrued service time. GM had extended the bridging window to 36 months on at least one prior occasion.

In May 2000, Chasco announced that it was closing the plant where Smiljanich worked, and he then applied to return to GM. Around this time, Smiljanich was recruited by Rassini Corporation, which knew him from his time at GM. Rassini did not offer the same retirement benefits as GM, but in the past it had supplemented employees' salaries to allow them to privately obtain comparable services. It was prepared to offer Smiljanich a similar package, but Smiljanich rebuffed Rassini's advances because he read the benefits materials he received in connection with the sale to extend his bridging window at GM to three years.

At his GM interview, Smiljanich was assured that he would be able to return "as if [he] never left General Motors." Believing this validated his reading of the benefits documents, Smiljanich agreed to return to GM. Because the offer letter contained language inconsistent with the

---

[1] GM stopped paying health and life insurance premiums for employees "whose continuous service with the Corporation commence[d] on or after January 1, 1993, and who retire[] after that date."

representations GM made in his interview, Smiljanich's acceptance included a request for a written confirmation that his dates of service would be bridged.

When Smiljanich returned to GM in July 2000, he was treated as if he were a bridged employee: he did not go through an orientation period, and his health benefits and vacation time were those of an employee with over 20 years of service. GM's internal electronic records at the time also reflected this status. However, when Smiljanich received his 2001 personal total compensation summary, his length of service was listed as six months as of December 31, 2000. This prompted him to contact GM human resources. In response to his inquiries, Smiljanich received a letter from the GM pension administration center stating that his length of service had been changed to 23 years and three months as well as a calculation of credited service form to the same effect. He also received a note from human resources in January 2002 stating that his length of service date was March 31, 1977.

In February 2002, Smiljanich's case came to the attention of GM's policy administrator, who determined he should not have been bridged. She informed human resources at Smiljanich's plant, but Smiljanich did not learn of the adverse decision until June 28, 2002. At the urging of various GM employees, including the plan administrator, Smiljanich initiated an internal appeal–first to the GM's Employee Benefit Plans Committee then to the GM Policy Committee. During the appeals process, Smiljanich again rebuffed an approach from Rassini corporation, unaware that the appeal process could not help him: Employee Benefits did not have authority to settle disputes as to length of service, and Policy had no authority to override company policy on this issue. Smiljanich's internal appeal was denied in January 2003.

Having exhausted his internal remedies, Mr. Smiljanich sued GM in federal district court. His complaint stated claims for arbitrary and capricious administration of an ERISA plan, breach of contract, misrepresentation, and ERISA equitable estoppel. Mr. Smiljanich sought reinstatement of eligibility for benefits that depended on his length of service, reimbursement for replacement life insurance that he had purchased, and attorneys' fees. The district court held that Smiljanich's state law claims were preempted, but that GM's benefits decision was arbitrary and capricious. The district court reserved the question of equitable estoppel, which had not yet been briefed or argued. It also denied attorneys fees based upon a finding that GM did not make its benefits decision in bad faith. The parties cross-appealed these decisions, and a panel of this court reversed the district court's ruling that the benefits decision was arbitrary and capricious. *Smiljanich v. General Motors Corp.*, 182 Fed. App'x 480 (6th Cir. 2006). The case was remanded to the district court for resolution of the equitable estoppel claim. The district court then held that Smiljanich had established the elements of an equitable estoppel claim under ERISA and was entitled to attorneys fees. GM now appeals.

II.

We review the district court's findings of fact for clear error, and its legal conclusions de novo. Fed. R. Civ. Pro. 52(a)(6); *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 990 (6th Cir. 2007). Because whether Smiljanich established the elements of equitable estoppel is a determination of law, it is reviewed de novo. Whether to grant attorneys fees is a matter within the discretion of the district court. It is thus reviewed for abuse of discretion. *Sec'y of Dep't. of Labor v. King*, 775 F.2d 666, 669-70 (6th Cir. 1985).

III.

Estoppel under ERISA is an equitable doctrine of the federal common law of contracts designed to enforce ERISA and the agreements made under it. *Armistead v. Vernitron*, 944 F.3d 1287, 1298 (6th Cir. 1991). There are five elements to an estoppel claim under ERISA: (1) a representation of fact made with gross negligence or fraudulent intent; (2) made by a party aware of the true facts; (3) intended to induce reliance or reasonably believed to be so intended; where the party asserting the estoppel is (4) unaware of the true facts; and (5) reasonably or justifiably relies on the representation to his detriment. *Trustees of the Mich. Labors' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir. 2007).

*1.    Were the plan documents clear?*

ERISA estoppel is not available to override the clear terms of plan documents, *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (en banc), and GM's first argument is that Smiljanich may not bring an estoppel claim because the plan documents that govern his case were clear.

Whether plan documents are clear is an objective inquiry. As this Court observed in *Sprague*:

> Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions. There are at least two reasons for this. First, as we have seen, estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

133 F.3d at 404 (citations omitted).  That is, the question is whether *the documents themselves* are clear. Smiljanich's subjective understanding of them has no bearing on this issue, and GM's argument to the contrary is without merit.  Subjective understanding goes to the reasonable reliance prong of the estoppel claim; the threshold ambiguity determination is concerned not only with reliance but also with ERISA policy.  This requires an objective inquiry.

The key plan document in this case is a summary booklet entitled "Your Benefits and Status of the General Motors Salaried Employee Following the Sale of Delphi Chaffee Systems Coil Spring Operation," which Smiljanich received when GM sold the Delphi spring coil operation to Chasco. The language at issue in this case is found on pages 5 and 14.  Page 14 of that booklet states:

> On the date of the sale, you will be separated from employment with General Motors. The classification of separation will be "Special Separation–Sale of Activity."
> . . .  If you are re-employed by General Motors within 12 months following separation from General Motors, your General Motors length of service will be determined on the basis of the circumstances of your individual case.

Somewhat similarly, page 5 of the booklet reads:

> You may receive benefits under these retirement provisions only if (1) all eligibility requirements are met, and (2) you are not actively employed by the successor company.  You will not be eligible for contributions for health care and Basic Life Insurance coverages in retirement unless you are . . . terminated, other than for cause, by the successor company within three years of the date of transfer, return to GM, and retire from GM with eligibility for such coverages and contributions in retirement on the date of such retirement.

The district court found these provisions were not clear as to whether Smiljanich could be considered for bridging within 12 months or three years of his return to GM.  We agree.  The page 14 text is less than clear in its application to Smiljanich's case, and the page 5 text may plausibly be read as extending the normal bridging period.  As this Court observed in the first appeal in this case:

> GM maintains that [page 5] has nothing to do with bridging. We think that most readers would conclude otherwise. . . . That language has no clearly discernable purpose, it seems to us, unless it is to extend from 12 months to 36 months the window of opportunity to be considered for bridging.

182 Fed. App'x at 486. It was incumbent upon GM, as the drafter of this document, to draft it with sufficient clarity. GM failed to adequately do so, and the broader context of GM's standard benefits literature does not cure this: as noted above, the page 5 text could plausibly be read as modifying the standard policy.

2.      *Did Smiljanich satisfy the elements of ERISA estoppel?*

GM also argues that Smiljanich failed to satisfy the elements of equitable estoppel. Again, we disagree.

The first element of Smiljanich's estoppel claim is that GM made a factual representation with either gross negligence or fraudulent intent. *Gibbons*, 209 F.3d at 591. Here, the district court found that GM represented to Smiljanich that his dates of service would be bridged prior to his return, for the first year and a half of his employment, and during his subsequent appeal. The court also found that GM, through its employees, understood that Smiljanich was not a bridged employee but failed to inform him of this for two years, even in the face of persistent inquiries by Smiljanich. Further, the district court found that GM was aware that no one in the chain of appeal had the power to change company policy, but that GM employees nonetheless encouraged Smiljanich to pursue an internal appeal. These factual findings are not clearly erroneous, and together they establish the first element of Smiljanich's estoppel claim. GM's conduct was at a minimum grossly negligent.

The second element is that GM was aware of the true facts. *Id.* Again, the district court found that several GM employees, including its policy administrator and policy committee, understood GM's policy and that no one in the chain of internal appeal had the power to change it. These factual findings are not clearly erroneous, and together they establish that GM was aware of the true facts.

The third element is that the representation was intended to induce reliance or that the party asserting estoppel reasonably believed that it was so intended. *Id.* The district court found that Smiljanich was told he would be bridged at his initial interview and repeatedly over the next two years. These facts are not clearly erroneous, and together they establish that Smiljanich reasonably believed that GM intended for him to rely on its assertion that he would be a bridged employee. In the face of ambiguous plan documents, he had no reason to believe he should not.

As to the fourth element, that Smiljanich was unaware of the true facts, *id.*, the district court found that Smiljanich was not aware that his employment would not and could not be bridged. This factual finding is not clearly erroneous. There is some conflicting testimony in the record as to Smiljanich's understanding of GM's policy, but we do not see grounds upon which to overturn the district court's finding. Even if Smiljanich understood GM's general bridging policy, that does not show he understood that no one at GM could make exceptions to it, or indeed that he did not reasonably believe that GM had extended it in his case. Further, the district court's finding is consistent with Smiljanich's actions over the course of two years–returning to GM in the first place and doggedly pursuing full benefits even with other available employment opportunities. It would be difficult to explain this sustained course of conduct if Smiljanich was aware that he could not be bridged. Smiljanich has established the fourth element of his claim.

The fifth element is reasonable, detrimental reliance. *Id.* In the face of ambiguous plan documents and repeated words and conduct by GM that he would be bridged, it was reasonable for Smiljanich to rely upon GM's statements. It is entirely reasonable for an employee to rely upon the non-adversarial representations of GM's employment professionals. Smiljanich was given no reason to doubt the reliability of their unbroken words and conduct over the better part of two years. Thus, his reliance was reasonable.

Smiljanich also suffered legal detriment as a result of this reliance. Traditional common law principles of equity require that the party asserting estoppel establish that he adversely changed his position in reliance upon the representation of the party to be estopped. And, while this loss must be actual and substantial, it may be shown in diverse ways, including through loss of evidence and loss of opportunity to improve one's position. For example, in *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991), this Court held that a group of employees who failed to retire until their plant closed had suffered detriment when corporate headquarters subsequently terminated their benefits. In that case, we reasoned:

> Had plaintiffs known this they might have acted differently. For instance, they might have sought a declaratory judgment settling the issue, or they might have retired before the date of the plant shut-down, as other employees had done. *They did not do so, thereby acting to their detriment–or at least failing to act to their advantage–because of what they had been told by Vernitron officials*.

944 F.2d at 1299 (emphasis added). The plaintiffs in *Armistead* were led to believe they would receive guaranteed retirement benefits and as a result they allowed opportunities to protect their rights to pass by. Similarly here, Smiljanich was led to believe he would receive a bridged date of service, and he thus twice allowed opportunties with Rassini to pass by.

By its nature, the "lost opportunity" theory of detriment requires something of a counterfactual inquiry; however, in cases like *Armistead* where it is reasonably clear what the plaintiff lost, relief is appropriate. We believe this too is such a case. It is true that the benefits available to Smiljanich at Rassini would not have precisely mirrored those at GM, but the evidence in the record and the facts found by the district court indicate that Rassini was prepared to offer a salary which reasonably approximated the total compensation (salary and benefits) of full retirement at GM. This fact gives definition to the nature and scope of the opportunity lost by Smiljanich and it justifies both the district court's finding of detriment and the remedy it granted to Smiljanich in this case.

Because Smiljanich has established the elements of his equitable estoppel claim, we affirm the judgment of the district court as to equitable estoppel.

IV.

GM also challenges the district court's decision to award Smiljanich attorneys' fees under 29 U.S.C. § 1132(g)(1).

1.    *Law of the Case*

First, GM argues that the previous panel's decision that attorneys' fees were not appropriate for his "arbitrary and capricious" claim is law of the case and thus binding on this panel. We disagree.

The law of the case doctrine precludes reconsideration of an issue that was decided in a previous stage of litigation, either explicitly or by necessary inference from the disposition. *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (citation omitted). But whether

Smiljanich was entitled to attorneys' fees *on his equitable estoppel claim* was not decided by the prior panel in this case. Rather, it found that attorneys' fees were not available to Smiljanich because he did not prevail on *his arbitrary and capricious claim* on appeal. *See* 182 Fed. App'x at 488 ("Given that the judgment in favor of Mr. Smiljanich will be reversed, there is no basis for an award of fees to Smiljanich at this time."). The prior panel was careful to reserve judgment on the merits of the attorneys' fee issue: "Mr. Smiljanich's estoppel claim may prove successful on remand, and if it does we express no opinion as to whether an award of fees might be proper in connection with that claim." *Id*. Thus, the previous decision as to attorneys' fees is not law of the case.

*2.       Whether the district court abused its discretion in awarding attorneys' fees for Smiljanich's equitable estoppel claim.*

Next GM argues that the district court abused its discretion in awarding Smiljanich attorneys' fees. We agree that the district court abused its discretion in awarding attorneys' fees for work performed during the first phase of this case, which was devoted solely to Smiljanich's arbitrary and capricious administration claim. However, we affirm the grant of fees for the equitable estoppel phase.

The Sixth Circuit has adopted a five-factor test to govern decisions to award attorneys' fees: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a benefit on all participants of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of parties' positions. *King*, 775 at 669. And, while there is no presumption that a prevailing party

is entitled to attorneys' fees, *see Foltice v. Guardsman Prod., Inc.*, 98 F.3d 933 (6th Cir. 1996), we review a district court's grant of attorneys' fees for abuse of discretion. *King*, 775 F.2d at 669.

As for the first element, the district court found that GM represented to Smiljanich that his dates of service would be bridged prior to his return, for the first year and a half of his employment, and during his subsequent appeal. It also found that GM, through its employees, understood that Smiljanich was not a bridged employee but failed to inform him of this for two years, even in the face of persistent inquiries by Smiljanich. Further, the district court found that GM was aware that no one in the chain of appeal had the power to change company policy, but that GM employees nonetheless encouraged Smiljanich to pursue an internal appeal. These factual findings are not clearly erroneous, and it was not an abuse of discretion to base a culpability finding upon them.

GM does not dispute that the second factor weighs in favor of Smiljanich.

The third factor is the deterrent effect of the award. The district court found that a fee award would deter GM from "treating its loyal employees in a similar manner and impress upon the company the necessity of honoring the commitments it makes to its employees." As this Court has recognized, the weight of this prong is greatest in cases involving culpable conduct. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 645 (6th Cir. 2006). And, as discussed above, the district court found facts sufficient to establish this. In any case, Smiljanich's is not such a unique case that it would have no conceivable deterrent effect: GM's repeated administrative failures had a large hand in what happened, and the outcome of this lawsuit could well serve as an example to its peer companies. The district court did not abuse its discretion in finding this factor weighs in favor of Smiljanich.

The district court held the fourth factor to be inapplicable, and it thus did not contribute to the decision to award fees. This was not an abuse of discretion, as the fact that Smiljanich's claim does not involve a class or a novel legal question does not weigh against him; it simply does not weigh in favor of either party.

The fifth factor is the relative merits of the parties' positions. The district court found that this factor weighs in favor of Smiljanich. This was not an abuse of discretion: Smiljanich was the prevailing party in this suit and the district court found GM to have acted culpably in this case.

*3. Fees accrued prior to June 22, 2006*

Finally, GM argues that the district court erred in awarding attorneys' fees for all stages of litigation where the first stage involved a separate claim upon which he did not prevail. While we find this to be a close question, we agree.

The Supreme Court stated the rule for fees involving successful and unsuccessful claims in *Hensley v. Eckerhart*, 461 U.S. 424 (1983):

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440.

Here, while it is true that both claims arise under ERISA, the two claims are distinct in substance and were in fact litigated separately in this case. To begin, their elements are distinct and they are or different scope and require different factual support to prove. Arbitrary and capricious

administration is limited to reviewing whether the plan administrator's benefits decision was reasonable in light of company policy; equitable estoppel is a misrepresentation theory which encompasses all aspects of GM's interaction with Smiljanich. The fact that Smiljanich only prevailed on the latter theory highlights these differences. Further, this case is unlike the standard case involving prevailing and non-prevailing claims because the claims were not litigated all at once–they were bifurcated and litigated consecutively. Here, the claim for arbitrary and capricious administration claim was heard on the basis of the administrative record. The parties did not engage in discovery related to the estoppel claim at this time, nor did they brief it, nor did they present argument on it to the district court. The fact that much of the factual basis for the estoppel claim was contained in the administrative record does not change the fact that the two claims were litigated separately, and that plaintiff was not working on the estoppel claim during the first stage. There is no difficulty in apportioning fees between the two phases.

Both the district court and this court held that Smiljanich was not entitled to attorneys' fees for his arbitrary and capricious claim. In light of the bifurcated litigation, to grant fees for the first phase now would functionally reverse that decision and bootstrap in all work performed in this case. Under these circumstances, awarding all fees accrued for both phases of litigation would not be "reasonable in relation to the results obtained." *Hensley*, 464 U.S. at 440.

V.

We AFFIRM the judgment of the district court as to Smiljanich's equitable estoppel claim, and REVERSE its award of attorneys' fees for services performed prior to June 22, 2006.