NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0005n.06

No. 09-4152

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 04, 2011**
LEONARD GREEN, Clerk

MEREDITH SOLOMON,                    )
                                     )
    Plaintiff-Appellant,             )
                                     )
                                     )    ON APPEAL FROM THE UNITED
v.                                   )    STATES DISTRICT COURT FOR THE
                                     )    NORTHERN DISTRICT OF OHIO
MEDICAL MUTUAL OF OHIO,              )
                                     )
    Defendant-Appellee.              )

Before: MERRITT, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge. In an action brought pursuant to the Employee Retirement Income Security Act (ERISA), Meredith Solomon sought reimbursement from Medical Mutual of Ohio (MMO) for charges she incurred for treatment of her cocaine addiction. The district court upheld MMO's benefits determination and granted summary judgment to MMO. Solomon now appeals, arguing that the district court erred by applying arbitrary and capricious rather than de novo review, accepting MMO's interpretation of the insurance plan (the Plan), and rejecting her equitable-estoppel argument. We affirm.

I.

In January 2007, following significant weight loss, multiple overdoses, and a family intervention, Solomon decided to seek treatment for her cocaine addiction. Medical insurance

coverage instructions printed on an MMO-issued identification card led Solomon to peruse the First Health Network (First Health) website, which listed the Hanley Center (Hanley) as an in-network treatment facility. It turned out that, unbeknownst to Solomon, the outdated website failed to show that MMO had removed Hanley from its provider network at the end of the previous year. Solomon checked into Hanley and, despite being warned that the Plan would not cover her treatment there, stayed nearly two months. After checking out, Solomon participated in Hanley's outpatient therapy. In all, she incurred charges in excess of $40,000.

The Plan limits coverage to services deemed "Medically Necessary," defined in part as "the most appropriate . . . level of service which can be safely provided" to diagnose or treat the member's condition, and distinguishes between multiple such "level[s] of service." Relevant here is the distinction between "inpatient" care and "residential" care. A facility offering inpatient drug abuse treatment "mainly provides detoxification and/or rehabilitation treatment." By contrast, a facility offering residential treatment "provid[es] an individual treatment plan for the chemical, psychological and social needs of each of its residents," and its "[r]esidents do not require care in an acute or more intensive medical setting." Plan eligibility for inpatient care coverage requires that a member meet both of the following requirements:

- establish medical necessity by showing "that [her] medical symptoms or [c]ondition require [sic] that the services cannot be safely or adequately provided to [her] as an [o]utpatient," and
- obtain MMO's pre-approval for inpatient admission for drug abuse treatment.

The plan excludes all coverage for residential care: "**[R]esidential care rendered by a Residential Treatment Facility is not covered.**"

Within days of Solomon's admission to Hanley, MMO informed her that the Plan did not cover her treatment. Solomon contends that her mental and physical condition at that time prevented her from disputing the coverage decision. Months later, after checking out of the facility and while still participating in outpatient care, Solomon submitted an insurance claim to MMO. MMO's initial Explanation of Benefits denied Solomon's claim because her "benefit plan [did] not provide coverage for this service." Following Solomon's internal appeal, MMO's review prompted a redetermination that she "[did] not meet medical necessity criteria for inpatient rehabilitation services" because, among other reasons, she was psychiatrically and medically stable and did not exhibit severe risk factors. Finding that Solomon's treatment could thus have been handled "in a less restrictive level of care," MMO affirmed its determination to deny her claim.

Following this internal determination, Solomon triggered her right to review by an independent doctor. According to Dr. Edward M. Lukawski of Lumetra, an Independent Review Organization, Solomon's condition necessitated an "acute level of care" for her first two days of treatment but only "residential treatment" for the remainder of her stay. After receiving Dr. Lukawski's assessment, MMO paid Hanley for the two medically necessary days of Solomon's stay at the out-of-network rate and denied the remainder of her claim because Plan benefits excluded coverage of "inpatient admission for residential treatment for . . . substance abuse."

Solomon objected to the use of the out-of-network rate for the allowed days because the outdated website misled her. Upon further consideration, MMO agreed to pay for the first two days of Solomon's stay at the in-network rate because of First Health's error. MMO refused, however, to pay an in-network rate for any reimbursable expenses incurred after First Health updated its website.

Having exhausted the appeals process, Solomon sought relief in state court. MMO removed the case to federal court on preemption grounds and Solomon amended her complaint to allege a wrongful denial of benefits under ERISA. When Solomon later failed to file a requested supplemental brief supporting her motion for summary judgment, the district court interpreted Solomon's silence as conceding MMO's supplemental arguments, found that MMO's reasons for resolving Solomon's claims satisfied arbitrary and capricious review, dismissed Solomon's claim with prejudice, and granted summary judgment to MMO. Solomon then moved to file her supplemental brief instanter and vacate the grant of summary judgment. In denying both motions, the district court clarified that even if it had considered the arguments in Solomon's supplemental brief, it still would have found in favor of MMO because the Plan excluded coverage for the residential treatment Hanley provided, and the Plan required pre-approval of any inpatient care. Solomon now appeals.

II.

Solomon first challenges the standard of review the district court employed in reviewing MMO's resolution of her claims. Courts review the decision of a plan administrator de novo "'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'" in which case arbitrary and capricious review applies. *Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561 (6th Cir. 2007) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "[D]iscretion is the exception, not the rule and . . . the arbitrary and capricious standard does not apply unless there is a *clear* grant of discretion to determine benefits or interpret the plan." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). This court reviews de novo the standard of review applied by the district court. *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 364 (6th Cir. 2009).

Because the MMO Plan includes a clear grant of discretion in Section 7.6, titled "Retention of Discretion," the court here rightly reviewed using the arbitrary and capricious standard. That section reads as follows: "Medical Mutual shall have the exclusive right to interpret the terms of the Certificate, Schedule of benefits, riders and Amendments. The decision about whether to pay any claim, in whole or in part, is within the sole discretion of Medical Mutual and such decisions shall be final and conclusive." To the extent that Solomon attempts to argue that this language does not does qualify as a clear grant of discretion, we consider the argument forfeited because Solomon

offered it for the first time in her reply brief. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 n.4 (6th Cir. 2008).

"[E]ven when the plan documents confer discretionary authority on the plan administrator, when the benefits decision is made by a body other than the one authorized by the procedures set forth in a benefits plan, federal courts review the benefits decision *de novo*." *Shelby Cnty.*, 581 F.3d at 365 (internal quotation marks and citation omitted). Relying on *Sanford v. Harvard Industries, Inc.*, 262 F.3d 590 (6th Cir. 2001), and *Wintermute v. Guardian*, 524 F. Supp. 2d 954 (S.D. Ohio 2007), Solomon argues that despite any clear grant of discretion, the district court still should have applied de novo review because MMO did not act as the final decisionmaker with respect to her claim. But Solomon misconstrues these cases. In both, the courts settled on de novo review as the appropriate standard not simply because an outside entity acted as the final decisionmaker, but because the defendant-administrators *violated plan procedures* in making the benefits determination. *See Sanford*, 262 F.3d at 596–97 (applying de novo review where defendant-administrator violated plan appeal procedures); *Wintermute*, 524 F. Supp. 2d at 959–60 (applying de novo review where an "unauthorized body without discretionary authority" rendered decision).

Unlike the defendants in *Sanford* and *Wintermute*, MMO followed Plan procedures in assessing Solomon's claim. After Solomon exhausted the internal appeal process, she specifically requested external review of her claim—as permitted under the terms of the Plan. MMO accordingly submitted her information to an Independent Review Organization and received Dr. Lukawski's

opinion as to medical necessity. Moreover, Dr. Lukawski did not "make a policy interpretation decision," as Solomon mistakenly contends. Although Dr. Lukawski's report quoted portions of the Plan, he opined only on the medical necessity of different types of care; he did not recommend a coverage decision. This requested, external-review opinion on medical necessity—which was almost entirely consistent with MMO's internal-review coverage determination—then triggered MMO to notify Solomon of its determination that the Plan entitled her to coverage for the period of acute detoxification as shown on the Hanley billing submitted with the claim. MMO, *not* "a body other than the one authorized by the procedures set forth in [the] benefits plan," determined—according to Plan procedures—the coverage applicable to Solomon's claim. *See Shelby Cnty.*, 581 F.3d at 365 (internal quotation marks and citation omitted). Because the Plan grants MMO discretion to construe its terms, and MMO, in doing so, followed Plan procedures, the district court properly reviewed under the arbitrary and capricious standard.

III.

Solomon next challenges MMO's interpretation of the Plan. Under arbitrary and capricious review, we uphold an administrator's decision "when it is possible to offer a reasoned explanation, based on the evidence[,] for a particular outcome." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). A court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). While deferential, arbitrary and capricious review does not compel

courts to merely rubber stamp the administrator's decision. *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010). When an administrator both evaluates and pays claims, a conflict of interest exists that must be weighed in determining whether the administrator met the arbitrary and capricious standard. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292–93 (6th Cir. 2005).

MMO maintains that Hanley qualifies as a "Residential Treatment Facility" and that, other than during the initial detoxification portion of her stay that constituted acute care, Solomon received residential care. Accepting that Hanley may meet the definition of Residential Treatment Facility, Solomon argues that it also qualifies as a "Drug Abuse Treatment Facility" at which she received inpatient care. We turn to the Plan language. The chief difference between a Residential Treatment Facility offering residential treatment and a Drug Abuse Treatment Facility offering inpatient care is that a Drug Abuse Treatment Facility "mainly provides detoxification and/or rehabilitation treatment for Drug Abuse," while a Residential Treatment Facility treats "[r]esidents [who] do not require care in an *acute or more intensive* medical setting" and "provid[es] an individual treatment plan for the chemical, psychological and social needs of each of its residents," (emphasis added). As the district court found, while "the Plan is certainly not a model of clarity, and the use of two terms—'residential' and 'inpatient'—in the Plan could generate confusion," *Solomon v. Med. Mut. of Ohio*, No. 1:09 CV 3, 2009 WL 3086483, at *5 (N.D. Ohio Sept. 23, 2009) (decision on motion to vacate judgment), MMO offered a rational interpretation of the Plan to label Hanley a Residential

Treatment Facility offering non-covered residential treatment, *see Morgan*, 385 F.3d at 992. As the bills Solomon submitted to MMO demonstrate, other than during the initial portion of her stay, Hanley did not "mainly provide[]" detoxification and rehabilitation treatment (as required to meet the definition of a Drug Abuse Treatment Facility offering inpatient care); it offered a significant amount of individual and group therapy, primary care, and nutritional counseling (fitting the description of a Residential Treatment Facility offering residential rather than more acute care).

Even if we accept Solomon's position that her stay at Hanley constitutes inpatient care, the Plan's provision that "[a]ll Covered Services must be Medically Necessary unless otherwise specified," would still foreclose coverage because Dr. Lukawski opined that treatment after Solomon's first two days of stay did not qualify as medically necessary acute care. The balance of her stay qualified as medically necessary—but Plan-excluded—residential care. Buttressed by Dr. Lukawski's independent review, MMO's decision to deny this aspect of Solomon's claim could not be called arbitrary and capricious.[1]

IV.

Finally, Solomon presses the view that MMO should have covered her outpatient treatment at the in-network rate rather than the out-of-network rate. It was not her fault, she contends, that the

---

[1]Because Solomon's claim fails for these reasons, we need not address whether MMO could also deny Solomon coverage for failing to obtain written pre-certification at Hanley, as the Plan requires for inpatient drug abuse treatment.

website listing Hanley as in-network was out-of-date.  We read this as a federal-law estoppel claim because ERISA preempts all state laws that relate to any employee benefit plan.  *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 389–90 (6th Cir. 2009).

This court reviews de novo whether Solomon establishes the elements of an estoppel claim.  *See Smiljanich v. GM Corp.*, 302 F. App'x 443, 447–48 (6th Cir. 2008).  "In order to establish an estoppel claim:  (1) there must be conduct or language that amounts to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must have the intent that the representation be acted on or the party seeking estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party seeking estoppel must reasonably or justifiably rely on the representation to his detriment."  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 521 (6th Cir.), *cert. denied*, 131 S. Ct. 220 (2010).  In addition, the "[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions."  *Id*. (second alteration in original) (internal quotation marks and citation omitted).

Solomon points to no provision qualifying for estoppel treatment.  Though this Court has permitted application of estoppel absent qualifying ambiguity, it has done so only "where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud."  *Bloemker v.*

*Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010). Solomon's case lacks such intended deception or constructive fraud by MMO. The inaccurate information appeared on the website of third-party First Health, not on MMO's; Solomon does not allege that MMO knew of First Health's error; and she fails to present facts or cite legal authority that either supports a finding that MMO owed a duty to ensure the accuracy of First Health's website or that otherwise justifies holding MMO responsible for First Health's mistake. The district court thus did not err in rejecting Solomon's estoppel argument and affirming MMO's benefits determination.[2]

V.

For the above reasons, we AFFIRM the judgment of the district court.

---

[2]Solomon additionally requests remand to the district court for a determination as to her entitlement to attorney's fees under 29 U.S.C. § 1132(g)(1), without any argument to justify such a remand or explain why the district court might find such an award appropriate, particularly in view of the disposition here. As such, we bypass this request as forfeited. *See United States v. Hurley*, 278 F. App'x 574, 577 (6th Cir. 2008).

**MERRITT, Circuit Judge, concurring.** Due to the technical nature of the facts and law presented in this ERISA appeal, I write separately in hopes of providing added clarification. Under ERISA case law, a court must defer to the claims decision of a health insurer when the insurance policy gives the insurer authority to determine if the insured is eligible for benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). This is so notwithstanding the insurer's inherent conflict of interest: the insurer saves money if it denies the claim. *Id.* at 112–16. This case asks whether an insurer's decision to deny a claim loses the benefit of deferential review when that decision was supported by the recommendation of a neutral arbitrator during an external administrative appeal permitted by the policy. We hold that it does not. A contrary holding would afford less deference to the conflicted decisions of insurers when a neutral arbitrator reaches the same conclusion. Such a result would be absurd—and certainly is not mandated by ERISA or its interpreting case law. The meaning of this reasoning for this case is that we may only overturn Medical Mutual's denial of Solomon's claim if Medical Mutual acted arbitrarily and capriciously. It did not, so we affirm.

Solomon submitted a claim to Medical Mutual for approximately $40,000 for the two months she stayed at the Hanley Center for drug-addiction treatment. Medical Mutual denied her claim in its entirety. It explained that her treatment was not "medically necessary," as required by her policy. Solomon then filed an external appeal, which, under state law, was submitted to a randomly selected, neutral arbitrator—a so-called "independent review organization." *See* Ohio Rev. Code Ann. § 3923.67(A), (D); *id.* § 3901.80(C) (providing for random selection). Solomon's policy expressly

provided for this external appeal process. The neutral reviewer, Dr. Edward Lukawski, concluded that only the first two days of Solomon's stay at Hanley were medically necessary as inpatient care, the only kind of drug treatment covered by Hanley's policy. Relying upon Dr. Lukawski's conclusion, Medical Mutual denied Solomon's claim for all but her first two days.

Solomon's primary argument on appeal to this Court is that we should not review Medical Mutual's denial of the bulk of her claim under the deferential arbitrary-and-capricious standard because it was effectively Dr. Lukawski, and not Medical Mutual, who made the decision, and deference to external reviewers is not appropriate. She cites two cases, *Sanford v. Harvard Industries, Inc*, 262 F.3d 590 (6th Cir. 2001), and *Wintermute v. Guardian*, 524 F. Supp. 2d 954 (S.D. Ohio 2007), which the majority opinion properly distinguishes as holding that deference is improper when the decisionmaker was completely unauthorized by the policy—not that deference is improper when an external reviewer plays any role in forming the claims decision. Aside from her lack of authority, Solomon's argument is unpersuasive because the fact that a neutral expert came to the same conclusion as the insurer should make us more likely, not less likely, to defer to the insurer's determination. Thus, we review the denial under the arbitrary-and-capricious standard.

Under this standard, Solomon's case quickly falls apart. Nowhere in her briefs does Solomon argue that her stay at Hanley was medically necessary as inpatient care. The only drug treatment that

her policy covers is medically necessary inpatient care. Accordingly, Medical Mutual's decision to deny all but the first two days of her claim for this reason was not arbitrary and capricious.[3]

Finally, Solomon appeals a collateral claim regarding the rate at which Medical Mutual reimbursed her for her outpatient treatment. As with Solomon's primary claim, I agree with the majority opinion's reasoning and disposition of that issue.

---

[3]Medical Mutual also gives two independent reasons why it believes its decision to deny Solomon's claim was not arbitrary and capricious: (1) Solomon did not obtain preapproval, as required by her policy, before seeking treatment at Hanley; and (2) Hanley provided "residential treatment," which Solomon's policy never covers, rather than "inpatient treatment," which her policy covers only when medically necessary. Although the majority opinion agrees with Medical Mutual's second argument, we need not agree with either argument to affirm, because Solomon's lack of medical necessity alone is dispositive.