RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0299p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JOHN DUDENHOEFER, on behalf of himself
and all others similarly situated; ALIREZA
PARTOVIPANAH,

          *Plaintiffs-Appellants*,

    *v.*

FIFTH THIRD BANCORP; KEVIN T. KABAT;
PAUL L. REYNOLDS; THE PENSION AND
PROFIT SHARING COMMITTEE; NANCY
PHILLIPS; GREG CARMICHAEL; ROBERT
SULLIVAN; MARY TUUK; JOHN DOES 1–20,

          *Defendants-Appellees*.

No. 11-3012

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:08-cv-538—Sandra S. Beckwith, District Judge.

Argued: June 7, 2012

Decided and Filed: September 5, 2012

Before: COOK and STRANCH, Circuit Judges; LAWSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Peter H. LeVan, Jr., KESSLER TOPAZ MELTZER & CHECK, LLP,
Radnor, Pennsylvania, for Appellants. Joseph M. Callow, Jr., KEATING, MUETHING
& KLEKAMP PLL, Cincinnati, Ohio, for Appellees. Melissa Moore, UNITED
STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.
**ON BRIEF:** Edward W. Ciolko, Mark K. Gyandoh, KESSLER TOPAZ MELTZER &
CHECK, LLP, Radnor, Pennsylvania, Thomas J. McKenna, GAINEY & McKENNA,
New York, New York, for Appellants. Joseph M. Callow, Jr., James E. Burke, Danielle
M. D'Addesa, David T. Bules, KEATING, MUETHING & KLEKAMP PLL,
Cincinnati, Ohio, for Appellees. Melissa Moore, UNITED STATES DEPARTMENT

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of
Michigan, sitting by designation.

OF LABOR, Washington, D.C., Jay E. Sushelsky, AARP FOUNDATION, Washington, D.C., for Amici Curiae.

————————————

**OPINION**

————————————

JANE B. STRANCH, Circuit Judge.  Plaintiffs John Dudenhoefer and Alireza Partovipanah, participants in and contributors to their employer's retirement plan, filed suit against Fifth Third and several individual Defendants on behalf of themselves and a class of similarly situated individuals alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  Plaintiffs alleged that plan fiduciaries continued to invest in and hold Fifth Third Stock despite its precipitous decline in value in breach of their fiduciary duties including their duty to prudently and loyally manage the plan's investment in company securities.  The district court found Plaintiffs failed to state claims upon which relief could be granted and granted Defendants' Motion to Dismiss the Amended Complaint.  This appeal followed.  For the following reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

## I.  BACKGROUND

### A.     Factual History

Because this appeal arises from a decision at the motion to dismiss stage, we draw the facts from the allegations of the Amended Complaint.  Plaintiffs John Dudenhoefer and Alireza Partovipanah, former employees of Fifth Third Bank, are plan participants in the Fifth Third Bancorp Master Profit Sharing Plan ("the Plan") and invested in Fifth Third common stock through the Plan during the class period.  The Plan is a defined contribution retirement plan for employees sponsored by Fifth Third, which serves as trustee.  Participants make voluntary contributions to the Plan from their salaries and direct the Plan to purchase investments for their individual account from

options preselected by the Defendants. During the class period, these options included Fifth Third Stock, two collective funds, or seventeen mutual funds.

Once employees are eligible to participate in the Plan, Fifth Third matches 100% of the first 4% of a participant's compensation contributed as part of the employee's compensation package. Those matching contributions are initially invested in the Fifth Third Stock Fund but may be moved subsequently to the other investment options. The Plan is not invested solely in Fifth Third Stock, nor is it required to be: the Plan Document does not mandate that the Fifth Third Stock Fund invest solely in Fifth Third Stock and does not limit the ability of the Plan fiduciaries to remove the Fifth Third Stock Fund or divest assets invested in the Fifth Third Stock Fund, as prudence dictates. The Plan fiduciaries chose to incorporate by reference Fifth Third's SEC filings into the Summary Plan Description (SPD), an ERISA required communication to Plan participants.

During the class period, a significant amount of the Plan's assets were invested in Fifth Third Stock. Plaintiffs allege that, during this period, Fifth Third switched from being a conservative lender to a subprime lender, its loan portfolio became increasingly at risk due to defaults, and it either failed to disclose the resulting damage to the company and its Stock or provided misleading disclosures. The price of Fifth Third Stock declined 74% from the beginning of the class period, July 19, 2007 through September 18, 2009, causing the Plan to lose tens of millions of dollars. The Amended Complaint further alleges that: Defendants were aware of the risks presented by its investment in the subprime lending market, citing specific public sources; and business and accounting mismanagement related to these risks, coupled with incomplete and inaccurate statements by Fifth Third executives, caused the price of Fifth Third Stock to be artificially inflated before plummeting. It is alleged that "[a] prudent fiduciary facing similar circumstances would not have stood idly by as the Plan's assets were decimated."

**B.     Procedural History**

On September 21, 2008, Plaintiffs filed an Amended Complaint alleging ERISA violations against Fifth Third; Kevin T. Kabat, Fifth Third's President and Chief Executive Officer during the class period; and members of Fifth Third's Pension, Profit Sharing, and Medical Plan Committee (the "Committee"). Plaintiffs allege each Defendant acted as a fiduciary with respect to the Plan during the class period. The Amended Complaint contains four counts. Count I alleges that: (1) all Defendants breached their fiduciary duties under ERISA by maintaining significant investment in Fifth Third Stock and continuing to offer it as an authorized investment option at a time that they knew or should have known it was imprudent to do so; and (2) the Defendants breached their fiduciary duties by failing to provide Plan participants with accurate and complete information about Fifth Third and the risks of investment in Fifth Third Stock. Count II alleges that Fifth Third and President/CEO Kabat breached their fiduciary duties under ERISA by failing to properly monitor the performance of their fiduciary appointees. Count III alleges that all Defendants failed to avoid or ameliorate inherent conflicts of interest relating to their management of the Plan. Finally, Count IV alleges that all Defendants are liable for breaches of their co-fiduciaries.

On October 5, 2008, Defendants filed a Motion to Dismiss the Amended Complaint. On November 24, the district court granted the motion, finding that the Amended Complaint failed to state a plausible claim for relief. Specifically, the district court found that the Plan was an employee stock ownership fund ("ESOP") under ERISA and, thus, Defendants benefitted from a presumption that their decision to remain invested in employer securities was reasonable. Applying this presumption at the motion to dismiss stage, the district court found that Count I of the Amended Complaint failed to allege facts to overcome this presumption of reasonableness. The district court also found that Count I of the Amended Complaint failed to the extent it relied on SEC filings incorporated into Plan documents because the court concluded the Defendants did not speak in a fiduciary capacity when those alleged misstatements and omissions were made. Finally, the district court dismissed the remaining Counts based entirely on their

dependency on Count I.  The district court dismissed the Amended Complaint in its entirety and denied the Plaintiffs' request for leave to amend.  Plaintiffs timely appealed.

## II.  ANALYSIS

### A.       Standard of Review

This court reviews the district court's order granting a Rule 12(b)(6) motion to dismiss de novo.  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).  In assessing a complaint for failure to state a claim, we must construe the complaint in the light most favorable to the plaintiff, accept all well pled factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted).

### B.       Count I: Violations of ERISA Fiduciary Duties

#### *1.       Fiduciary Duties under ERISA for ESOPs*

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  ERISA safeguards the "financial soundness" of employee benefit plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(a), (b).  Section 404(a)(1) establishes the fiduciary duties of trustees administering plans governed by ERISA:

> (a) Prudent man standard of care
>
> (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
>> (A) for the exclusive purpose of:

> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so;   and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).   These fiduciary duties have been broken down into three components.  *See Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 840 (6th Cir. 2003).   First, a fiduciary owes a duty of loyalty "pursuant to which all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries."  *Id.*  (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995) (internal quotations marks omitted)).   Second, ERISA imposes "an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to [the] plan participants and beneficiaries."  *Id.* (same).   Third, ERISA fiduciaries must act for the exclusive purpose of providing benefits to plan beneficiaries.  *Id.*  "The duties charged to an ERISA fiduciary are the highest known to the law."  *Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585, 591 (6th Cir. 2012) (citation and alteration omitted).   Section 409(a) of ERISA holds a fiduciary who breaches any of these duties personally liable for any losses to the plan that result from its breach of duty.  29 U.S.C. § 1109(a).

Congress made certain exceptions to these fiduciary duties for investments by employee stock ownership plans ("ESOPs"), defined under 29 U.S.C. § 1107(d)(6).  *See Kuper*, 66 F.3d at 1458.  Specifically, Congress eliminated the duty to diversify and the

duty of prudence *to the extent that it requires diversification* with respect to investment in employer stock.  29 U.S.C. § 1104(a)(2).  "[A]s a general rule, ESOP fiduciaries cannot be held liable for failing to diversify investments, regardless of whether diversification would be prudent under the terms of an ordinary non-ESOP pension plan." *Kuper*, 66 F.3d at 1458.

However, these specific statutory exemptions do not relieve ESOP fiduciaries from their remaining fiduciary duties.  As we explained in *Kuper*, the statutory exemptions for ESOPs

> do[] not relieve a fiduciary . . . from the general fiduciary responsibility provisions of [§ 1104] which, among other things, require a fiduciary to discharge his duties respecting the plan solely in the interests of plan participants and beneficiaries and in a prudent fashion . . . nor does it affect the requirement . . . that a plan must be operated for the exclusive benefit of employees and their beneficiaries.

*Id.* (citations omitted) (alterations and omissions in original); *Eaves v. Penn*, 587 F.2d 453, 460 (10th Cir. 1978) ("[T]he legislative history combined with a natural and clear reading of § 404, lead to the inexorable conclusion that ESOP fiduciaries are subject to the same fiduciary standards as any other fiduciary except to the extent that the standards require diversification of investments.").

These competing concerns—administering ESOP investments consistent with the provisions of both a specific employee benefit plan and the comprehensive fiduciary scheme of ERISA—are "particularly evident when an employee claims that a fiduciary breached his ERISA duties by failing to diversify an ESOP." *Kuper*, 66 F.3d at 1458. In recognition of this conflict, we have adopted an abuse of discretion standard of review for an ESOP fiduciary's decision to invest in employer securities.  *Id.* at 1459.  "A fiduciary's decision to remain invested in employer securities is presumed to be reasonable, the so-called *Kuper* or *Moench* presumption." *Pfeil*, 671 F.3d at 591 (citing *Kuper*, 66 F.3d at 1459).  "A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision."  *Kuper*, 66 F.3d at 1459.  Our precedent thus

establishes the standard that we find strikes the proper balance between the limited exemptions for ESOPs and fulfillment of the remedial purposes of ERISA.

> 2. *Continued Offering of and Failure to Divest the Plan of Fifth Third Stock*

The Amended Complaint alleges in Count I that all Defendants breached their ERISA fiduciary duties by continuing to offer and failing to divest the Plan of Fifth Third Stock and by failing to provide complete and accurate information about Fifth Third Stock. These allegations underlie all Counts of the Amended Complaint and we turn now to application of the legal standards to the allegations.

> a. **Application of the *Kuper* presumption**

The district court determined that *Kuper*'s presumption of reasonableness applies at the motion to dismiss stage and was not overcome here. In so holding, it recognized that at the time of its decision, we had not resolved the issue and our district courts were split. This is no longer the case.

In February 2012, we issued our decision in *Pfeil* holding that the *Kuper* presumption "is not an additional pleading requirement and thus does not apply at the motion to dismiss stage." 671 F.3d at 592. We based our conclusion on "the plain language of *Kuper* itself where we explained that an ESOP plaintiff could 'rebut this presumption of reasonableness by *showing* that a prudent fiduciary acting under similar circumstances would have made a different investment decision.'" *Id.* at 592-93 (emphasis added in *Pfeil*) (quoting *Kuper*, 66 F.3d at 1459). We noted that *Kuper* applied the presumption at summary judgment to a fully developed evidentiary record and reasoned that it would be inconsistent to apply the *Kuper* presumption—which concerns questions of fact—at the pleading stage where the court must accept the well pled factual allegations of a complaint as true. *Id.* at 593.

*Pfeil* recognized that some circuits have reached a different conclusion and apply the presumption of reasonableness at the pleading stage. We specifically distinguished several cases relied on by the district court in this case noting that, "[w]e find these decisions distinguishable because these circuits have adopted more narrowly-defined

tests for rebutting the presumption than the test this Court announced in *Kuper*." *Id.* at 594-95. Unlike these other circuits, we emphasized that the Sixth Circuit has "not adopted a specific rebuttal standard that requires proof that the company faced a 'dire situation,' something short of 'the brink of bankruptcy' or an 'impending collapse.'" *Id.* at 595. When properly applied to a fully developed evidentiary record, *Kuper* only requires a plaintiff to prove that "a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Kuper*, 66 F.3d at 1459. And this unembellished standard makes sense—not just because it closely tracks the statutory language of § 404(a)(1)(B)—but also because that language imposes identical standards of prudence and loyalty on *all* fiduciaries, including ESOP fiduciaries. Due to this equality of standard, if a "prudent man acting in a like capacity and familiar with such matters" would not have undertaken that conduct at issue, then an ESOP or any other fiduciary may not do so regardless of whether a dire situation, pending bankruptcy, or impending collapse exists. We are not free to limit the standard set by the statute by imposing conditions not present in the statutory language.

Following the teaching of *Pfeil*, we do not apply the *Kuper* presumption of reasonableness to test the sufficiency of Plaintiffs' Amended Complaint. We apply the normal rules of notice pleading under Federal Rule of Civil Procedure 8. Thus, the proper question at the Rule 12(b)(6) stage in this case is whether the Amended Complaint pleads "facts to plausibly allege that a fiduciary has breached its duty to the plan" and a causal connection between that breach and the harm suffered by the plan—"that an adequate investigation would have revealed to a reasonable fiduciary that the investment [in Fifth Third Stock] was improvident." *Pfeil*, 671 F.3d at 596.

### b.        Sufficiency of Plaintiffs' Allegations

In the Amended Complaint, Plaintiffs allege that by the class period starting date of July 19, 2007, Defendants had knowledge of the 2007 warnings by industry watchdogs of subprime lending practices, the rise of foreclosures and delinquency rates in real estate loans, several published articles warning of the risks of loosening standards in order to invest in the subprime lending market, and the closure of several mortgage

companies due to their investment in the subprime mortgage industry. The Amended Complaint specifically enumerates and describes these warnings and public information of which the Defendants were aware. Plaintiffs allege this knowledge should have led Defendants to investigate whether Fifth Third Stock was still a prudent investment given its own exposure to the subprime lending. In addition to overexposure to subprime lending, the Amended Complaint also alleges Fifth Third Stock was an imprudent investment option because of company mismanagement and lack of sound leadership. Plaintiffs allege that Defendants knew or should have known of the existence of these problems because of their high-ranking positions within the company. The Amended Complaint alleges Fifth Third's participation in the U.S. Government's Troubled Asset Relief Program ("TARP") is further evidence that the company was in a weakened financial condition and an imprudent investment.[1]

As *Pfeil* explained, Plaintiffs need only allege a fiduciary breach and a causal connection to losses suffered by the Plan. They do so here. Plaintiffs allege that Fifth Third engaged in lending practices that were equivalent to participation in the subprime lending market, that Defendants were aware of the risks of such investments by the start of the class period, and that such risks made Fifth Third Stock an imprudent investment. Plaintiffs allege the price of Fifth Third Stock dropped 74% during the class period. The Amended Complaint also expressly alleges that "[a]n adequate (or even cursory) investigation would have revealed to a reasonable fiduciary that investment by the Plan in Fifth Third Stock was clearly imprudent. A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made different investment decisions."

---

[1] In *Pfeil*, we gave examples of a court's temptation "to consider facts and evidence that have not been tested in formal discovery" when applying the *Kuper* presumption to a motion to dismiss. *Pfeil*, 671 F.3d at 593-94. For example, evidence presented by State Street, the defendant in *Pfeil*, in its motion to dismiss allegedly showed the government was expected to intervene on behalf of the company, which State Street argued showed that it was not unreasonable for the plans to continue to hold company stock during the class period. *Id.* We noted that "[t]he possibility of federal intervention and its effect on the reasonableness of holding company stock, however, present questions of fact inappropriate for resolution on a motion to dismiss." *Id.* Therefore, the district court erred to the extent it weighed Plaintiffs' alleged evidence of Fifth Third's participation in the TARP program and its effect on the reasonableness of holding Fifth Third Stock.

Based on the foregoing, the Amended Complaint plausibly alleges a claim of breach of fiduciary duty and the requisite causal connection under Count I regarding Defendant's failure to divest the Plan of Fifth Third Stock and remove that stock as an investment option. *See Pfeil*, 671 F.3d at 596.

### 3. Failure to Provide Complete and Accurate Information About Fifth Third Stock

"[A] claim based on the purported material misrepresentations of fiduciaries is a classic breach-of-fiduciary-duty claim under ERISA." *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 826 (6th Cir. 2007). "As one would expect, lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in § 404(a)(1)." *Gregg*, 343 F.3d at 843 (citation, alteration, and internal quotation marks omitted). A fiduciary also may not materially mislead beneficiaries. *Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996). We have explained that "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing . . . benefits to which she may be entitled." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (citation omitted). ERISA fiduciary duty provisions incorporate the common law of trusts, and the "duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* at 548 (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)). Significantly, "a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *Id.* at 547.

The threshold question in all cases charging breach of ERISA fiduciary duty is whether the defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). A defendant's fiduciary status is also an element of a claim of misrepresentation. To establish a claim for breach of fiduciary duty based on alleged

misrepresentations, a plaintiff must show that: (1) defendant was acting in a fiduciary capacity when it made the challenged statements; (2) the statements constituted material misrepresentations; and (3) plaintiff relied on them to his/her detriment. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). "Whether the communications constituted misrepresentations and whether they were material . . . are questions of fact that are properly left for trial." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 (3d Cir. 1996); *see James*, 305 F.3d at 455   ("[W]ith respect to the situation presented when an employer on its own initiative disseminates false and misleading information about a benefit plan, the position of the Sixth Circuit is aligned with that of the Third Circuit in *Unisys*.").

The district court held that Plaintiffs' disclosure claim in Count I failed because Defendants' alleged misstatements and omissions were not made in a fiduciary capacity when Defendants expressly incorporated Fifth Third's SEC filings into Plan documents. The court's conclusion is broader than its reasoning, which focused on the filing of SEC documents *with the SEC*, not on the decision of Defendants to *incorporate those filings into the Plan documents*.  Plaintiffs concede that the preparation, signing, and filing of SEC documents are not fiduciary acts under ERISA. *See In re World Com, Inc.*, 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003).  The issue here is Plaintiffs' allegation that Defendants violated their fiduciary duties when they chose to incorporate SEC filings into  ERISA Plan documents.

The Defendants expressly incorporated by reference specifically named SEC filings into the Plan's summary plan description ("SPD").  An SPD, a document ERISA requires to be sent to plan participants to provide specified information about the plan, is unquestionably a fiduciary communication. *See* 29 U.S.C. § 1022. Defendants chose to provide Plan participants with selected information—alleged to include misrepresentations about Fifth Third and its Stock—by incorporating only specifically enumerated SEC filings and specific future filings into the SPD:

> The SEC allows us to "incorporate by reference" into this booklet the information we file with it, which means that we can disclose important information to you by referring you to those documents. The information

incorporated by reference is an important part of this booklet, and information that we subsequently file with the SEC will automatically update and supersede information in this booklet and in our other filings with the SEC. In other words, in case of a conflict or inconsistency between information contained in this booklet and information incorporated by reference into this booklet, you should rely on the information that was filed later.

Am. Compl., Ex. A, SPD of Fifth Third Bancorp at 44.

The Defendants correctly make no broad challenge to their status as fiduciaries with respect to the preparation of Plan documents. The Amended Complaint alleges Fifth Third was the trustee of the Plan and exercised responsibility through the Committee for communicating with Plan participants and, in this fiduciary capacity, disseminated the Plan documents, including the Plan SPD to participants. The Amended Complaint also plausibly alleges that Kabat, President and CEO of Fifth Third, is a de facto fiduciary in light of his authority to augment the Plan Committee's powers and responsibilities, authority to appoint Committee members, and authority to resolve issues left unresolved by the Committee. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (holding that plan fiduciaries include those "who exercise[] discretionary control or authority over a plan's management, administration, or assets"); 29 U.S.C. § 1002(21)(A). Finally, as named Plan administrator during the class period, the Plan Committee was correctly alleged to be a fiduciary. 29 U.S.C. § 1102(a)(1).

Although properly alleged to be fiduciaries with respect to the Plan, Defendants argue that they were not acting in a fiduciary capacity when they incorporated the SEC filings into the Plan documents. The district court identified *Varity Corp. v. Howe*, 516 U.S. 489 (1996), as an important precedent on the question of whether an employer was acting in a fiduciary capacity when making statements about a company's financial health. In *Varity*, the Court found that a defendant employer engaged in plan administration—therefore acting in a fiduciary capacity—when he intentionally connected his statements about the financial health of a division of the company to statements about the future of plan benefits. *Id.* at 504. In applying *Varity*, the district court only looked to the initial filing of the SEC disclosures and found "no factual

allegations, however, which indicate that the speaker was intentionally connecting his statements about Fifth Third's financial condition to the Fifth Third Stock Fund." Though *Varity* contains some applicable law, it primarily addresses the determination of when employer statements made outside the course of plan administration rise to the level of fiduciary communications. Such is not the case here. The Defendants were engaged in Plan administration: they were undertaking an ERISA-mandated fiduciary duty—the provision of information to Plan participants through the required SPD. See 29 U.S.C. § 1022. In this context, our job is to inquire whether the Amended Complaint plausibly alleged that Defendants committed a breach of fiduciary duty when, under the facts alleged, they chose to incorporate by reference Fifth Third's SEC filings into the Plan's SPD.

No circuit court has answered the question of whether the express incorporation of SEC filings into an ERISA-mandated SPD is a fiduciary communication. Defendants rely extensively on *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008), but the case provides no authority on this issue. The Fifth Circuit there addressed the question of whether the incorporation of SEC filings into a plan's prospectus is a fiduciary communication. It reasoned that the misrepresentations were not actionable under ERISA because they were only contained in the plan's prospectus and Form S-8 registration, and the defendant was obligated to file those documents under the securities laws and did not disseminate them to the plan participants. *Id.* at 257; *accord Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1283-84 (11th Cir. 2012) (incorporation of SEC filings into Form S-8 and stock prospectus are not fiduciary acts). That is not the case before us. And our case is the very situation the Fifth Circuit in *Kirschbaum* recognized was not before it. 526 F.3d at 257 (distinguishing a district court case where an employer "had used the 10a Prospectus as the Summary Plan Description ('SPD') for ERISA purposes," noting that "Kirschbaum makes no such claim, and the record reveals that the REI defendants issued a separate document to serve as the SPD") (citing *In re Dynegy, Inc. Erisa Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004)). Thus, *Kirschbaum* is, on its face, inapplicable.

We next review cases within our Circuit. A majority of district courts in this Circuit have found that incorporation of SEC filings into plan documents is a fiduciary act. *Compare Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2011 WL 1261196, at \*17 (E.D. Mich. Mar. 31, 2011) (dismissing the case under Rule 12(b)(6) but recognizing the principle that if certain financial information is distributed by a defendant or incorporated into plan documents, that information must be complete and accurate), *overruled by Griffin v. Flagstar Bancorp, Inc.*, 2012 WL 2989231 (6th Cir. July 23, 2012) (reversing the district court's dismissal under Rule 12(b)(6) because the complaint set forth a "plausible claim for breach of fiduciary duty"), *and In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 955 (W.D. Tenn. 2010) ("[S]ince it is universally accepted that ERISA fiduciaries are liable for making misrepresentations in plan documents, they should also be prohibited from incorporating into plan documents other documents that make material misrepresentations about the company and then disseminating those misrepresentations to plan participants." (quoting *Taylor v. KeyCorp*, 678 F. Supp. 2d 633, 642 (N.D. Ohio 2009))), *and In re General Motors ERISA Litig.*, No. 05-71085, 2007 WL 2463233, at \*6 (E.D. Mich. Aug. 28, 2007) (holding that defendants were engaged in acts of plan administration when they produced plan documents referencing various SEC filings that were allegedly misleading), *with Benitez v. Humana, Inc.*, No. 3:08CV-211-H, 2009 WL 3166651, at \*10 n.6 (W.D. Ky. Sept. 30, 2009) ("[T]he preparation of SEC filings is not a fiduciary act for purposes of ERISA, even if the SEC filings are incorporated by reference into ERISA documents."). The majority line of cases correctly resolves this issue.

The Amended Complaint plausibly alleges Defendants breached their fiduciary duties by intentionally incorporating Fifth Third's SEC filings into the Plan's SPD and thereby conveying misleading information to Plan participants. ERISA requires the issuance of an SPD, but does not require the incorporation of a company's SEC filings into the SPD. *See* 29 U.S.C. § 1022. Defendants exercised discretion in choosing to incorporate the filings into the Plan's SPD as a direct source of information for Plan participants about the financial health of Fifth Third and the value of its stock, an investment option in the Plan. *See Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 666

(6th Cir. 1998) (distinguishing between business and fiduciary decisions, and stating that "[a]n employer is said to act in a fiduciary capacity when it communicates with employees about their benefits because, in essence, the employer puts on its plan administrator hat and undertakes action designed to carry out an important purpose of the plan"). The SPD is a fiduciary communication to plan participants and selecting the information to convey through the SPD is a fiduciary activity. Moreover, whether the fiduciary states information in the SPD itself or incorporates by reference another document containing that information is of no moment. To hold otherwise would authorize fiduciaries to convey misleading or patently untrue information through documents incorporated by reference, all while safely insulated from ERISA's governing reach. Such a result is inconsistent with the intent and stated purposes of ERISA—to impose fiduciary duties "which are the highest known to the law," *Pfeil*, 671 F.3d at 591—and would create a loophole in ERISA large enough to devour all its protections.

We hold that Count I of the Amended Complaint—including the allegations that Defendants breached their fiduciary duties (1) by continuing to offer Fifth Third Stock as a Plan investment option and failing to divest the Plan of the Stock and (2) by providing false and misleading information and failing to provide complete and accurate information about the Stock to Plan participants—states a claim upon which relief may be granted.[2] The allegations of Count I easily satisfy the requirements that there be a

---

[2]Defendants argue that to the extent Plaintiffs allege the Defendants failed to timely disclose adverse corporate information, the Plaintiffs could not show loss causation. The district court agreed, concluding that under the efficient market theory any disclosed negative information would have been immediately assimilated by the market and reflected in the price of Fifth Third Stock. This argument is ill-timed and without merit. Whether losses would have been more or less significant following timely disclosure is speculative and, even if the question raised issues of causation and damages, such would be inappropriate for resolution at the motion to dismiss stage. *See Taylor v. KeyCorp*, 678 F. Supp. 2d 633, 643 (N.D. Ohio 2009) (quoting *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 863 (N.D. Ohio 2006)). Further, as courts have recognized:

> Assuming that Defendants in fact concealed and misrepresented material information on [the company stock], it is not evident that full public disclosure of the true facts would not have prevented as [sic] least some of the losses allegedly incurred by the Plan. Disclosure might not have prevented the Plan from taking a loss on [company] stock it already held; but it would have prevented the Plan from acquiring (through Plaintiffs' uninformed investment decisions and through continued investment of matching contributions) additional shares of overpriced [company] stock: the longer the fraud continued, the more of the Plan's good money went into a bad investment; and full disclosure would have cut short the period in which the Plan bought at inflated prices.

*In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 WL 3245931, at *12 (D.N.J. Sept. 14, 2004); *id.*

plausible allegation that a fiduciary breached its duty to the plan and a causal connection between that breach and the harm suffered by the plan.

## C.       Counts II, III, and IV of the Amended Complaint

Because the district court erred in dismissing Plaintiffs' prudence and disclosure claims under Count I, we reverse and remand the case. In its ruling below, the district court did not substantively analyze the plausibility of Counts II through IV because it found them derivative of Count I, which the court found deficient. These remaining Counts do present claims dependent upon the fiduciary breach allegations of Count I that we have found plausibly state a claim for relief. Based on our holding, we return Counts II through IV to the district court to address in accordance with the principles stated herein.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court judgment dismissing the Amended Complaint and **REMAND** for further proceedings consistent with this opinion.

---

at *12 n.17 ("In addition, as Plaintiffs suggest, although the Plan could not have sold Honeywell stock without full disclosure, it could have refrained from purchasing more without such disclosure."); *see also Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, at *4 (D.N.J. July 20, 2005) (holding that the efficient market theory is inapplicable at the motion to dismiss stage and noting that defendants "could have minimized Plan losses without disclosing adverse information by simply removing NUI stock as an investment option"). For these reasons, an efficient market theory does not foreclose Plaintiffs' ability to establish damages or loss causation.