JANE B. STRANCH, Circuit Judge,
concurring in part and dissenting in part.
Having examined the complaint de novo in a light most favorable to the plaintiffs, I conclude the plaintiffs stated plausible claims for breach of fiduciary duty and promissory estoppel against MetLife that warrant further factual development in district court. Accordingly, I would reverse the judgment dismissing those two claims and remand for further proceedings, but I would affirm the dismissal of all other claims.
We review de novo the district court’s Rule 12(b)(6) decision to dismiss, and in doing so we must view the complaint in the light most favorable to the plaintiffs and accept all factual allegations as true. See Erie Cnty. v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir.2012). To overcome a motion to dismiss, the plaintiffs’ complaint must include sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), but plaintiffs need not show that recovery is probable. Erie Cnty., 702 F.3d at 867. It is not our place to weigh the evidence, “but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim.” Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 452 (6th Cir. *575 2003). I am convinced that the plaintiffs pled cognizable claims for breach of fiduciary duty and promissory estoppel.
I. Breach of Fiduciary Duty
In constructing ERISA’s statutory scheme, Congress ensured that employers and third-party administrators who manage welfare benefit plans for employees and beneficiaries act with the highest fiduciary duty known to the law. See Duden-hoefer v. Fifth Third Bancorp, 692 F.3d 410, 417 (6th Cir.2012). A person or entity qualifies as a fiduciary
with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C. § 1002(21)(A). “[0]ne is a fiduciary to the extent he exercises any discretionary authority or control.” Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).
The duties of fiduciaries fall into three categories. Dudenhoefer, 692 F.3d at 417. First is the duty to remain loyal to plan participants and beneficiaries and ever vigilant of their interests. Id. Second is the unwavering duty to act as a prudent person would act under similar circumstances with “single-minded devotion to [the] plan participants and beneficiaries.” Id. (internal quotation marks omitted). Third is the responsibility to act for the sole purpose of providing benefits to the plan beneficiaries. Id. These standards derive from the common law of trusts, bearing in mind the special nature and purpose of employee benefit plans. Vanity Corp. v. Howe, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 449 (6th Cir. 2002).
Plan fiduciaries must communicate fully and accurately with plan participants and beneficiaries about the provisions of a welfare benefit plan. A fiduciary breaches his duty if he provides the plan participants or beneficiaries with materially misleading information, regardless of whether the statements or omissions were made negligently or intentionally. See James, 305 F.3d at 449.
To prevail on a claim of breach of fiduciary duty, the plaintiffs must show that: (1) MetLife acted in a fiduciary capacity when it made challenged representations; (2) MetLife’s statements constituted material misrepresentations; and (3) the plaintiffs relied on MetLife’s material misrepresentations to their detriment. See id. “[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing ... benefits to which she may be entitled.” Krohn v. Huron Mem’l Hosp., 173 F.3d 542, 547 (6th Cir.1999); Gregg v. Transp. Workers of Am. Int'l, 343 F.3d 833, 844 (6th Cir.2003). The plaintiffs allege that MetLife omitted a material fact from the written notices MetLife sent to inform them about the status of their continuing life insurance benefits: that GM reserved a right to modify or terminate the Plan. Material omissions, like material representations, can mislead, whether they are accomplished through negligent or intentional conduct. See Krohn, 173 F.3d at 547 (finding breach of fiduciary duty based on material omission).
In Sprague v. General Motors Corp., 133 F.3d 388 (6th Cir.1998), “this Court, sitting en banc, explicated the contours of an ERISA fiduciary’s duty to disclose information to beneficiaries.” James, 305 F.3d at 450. Although the Sprague court ulti *576 mately held that GM did not breach its fiduciary duty in modifying a health insurance plan for retirees, the James court explained Sprague as analyzing
a possible breach of fiduciary duty in terms of three disjunctive conditions. A breach of fiduciary duty occurs if (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider on its omi initiative provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.
James, 305 F.3d at 453 (citing Sprague, 133 F.3d at 405-06). See also Sengpiel v. B.F. Goodrich Co., 156 F.3d 660, 666 (6th Cir.1998) (observing Sprague recognizes that an explanation of Plan benefits may be subject to ERISA’s fiduciary standards). Although Sprague concluded that no breach of fiduciary duty occurred because none of the three specified conditions was met in that case, in Krohn we “found that the first condition was satisfied when the plan administrator breached its fiduciary duty by not providing complete and accurate information in response to the participant’s questions about available [long-term disability] benefits.” James, 305 F.3d at 453; Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 432 (6th Cir.2006) (noting Krohn recognized an equitable claim under § 1132(a)(3) where ERISA fiduciary misled plan participant or beneficiary).
In James, we considered the second scenario mentioned in Sprague, concluding the trial evidence showed that the employer, on its own initiative, provided false and misleading information to employees about future benefits of a health insurance plan. James, 305 F.3d at 453-56. In remanding for further proceedings, id. at 456, we relied on a Third Circuit case finding a similar breach of fiduciary duty where the employer affirmatively represented to its employees that their medical benefits would continue for life after retirement. Id. at 453-54 (citing In re Unisys Corp. Retiree Med. Benefit “ERISA” Litig., 57 F.3d 1255, 1264 (3d Cir.1995)). We also considered McMunn v. Pirelli Tire, LLC, 161 F.Supp.2d 97, 123 (D.Conn.2001), which “found that ‘by continuing to assure plaintiffs that they would receive the same benefits in retirement until their death without reference to the reservation of rights, defendant failed to convey complete and accurate information, and instead provided materially misleading information,’ upon which three of the plaintiffs detrimentally relied.” James, 305 F.3d at 454.
The reasoning of James is instructive here even though James involved a bench trial and this case comes to us on a Rule 12(b)(6) dismissal. As we apply the principles explained in James, we are required to view the plaintiffs’ complaint in the light most favorable to them and accept all of their factual allegations as true. See Erie Cnty., 702 F.3d at 867. The plaintiffs allege, and we must take as fact, that Met-Life acted in a fiduciary capacity when it prepared the written notices guaranteeing the plaintiffs’ continuing life insurance benefits would remain “in effect, without cost to you, for the rest of your life” while failing to mention that GM reserved a right to modify the Plan in the future. See Varity Corp., 516 U.S. at 505, 116 S.Ct. 1065 (“making intentional representations about the future of plan benefits ... is an act of plan administration”); Pfahler v. Nat’l Latex Prods. Co., 517 F.3d 816, 831-32 (6th Cir.2007) (holding issue of material fact existed on whether defendants acted in fiduciary capacity when misrepresentations were made).
Taking as true that MetLife acted as a Plan fiduciary when it prepared the notice *577 letters to retirees, MetLife had an obligation to provide the plaintiffs with complete and accurate information. See James, 305 F.3d at 453-56; Sprague, 133 F.3d at 406. “[I]n Unisys, the Third Circuit ruled that the reservation of rights provision did not protect an employer from liability for a breach of fiduciary duty ‘where a company has deliberately fostered the belief that retirement benefits are lifetime benefits, and is aware that its employees incorrectly — if understandably — believe that their ... benefits will continue unchanged for the duration of their retirement.’ ” James, 305 F.3d at 454 (quoting In re Unisys Corp. Retiree Med. Benefit “ERISA” Litig., 57 F.3d at 1265 n. 15). We explained in James:
Sprague does not stand for the proposition that a reservation of rights provision in a[n] SPD necessarily insulates an employer from its fiduciary duty to provide “complete and accurate information” when that employer on its awn initiative provides inaccurate and misleading information about the future benefits of a plan. Indeed, Sprague explicitly allows for a breach of fiduciary duty claim under such a circumstance. Were it otherwise, an employer or plan administrator could provide, on its own initiative, false or inaccurate information about the future benefits of a plan without breaching its fiduciary duty under ERISA, simply because of the existence of a reservation of rights provision in the plan. However, this would be contrary to the basic concept of a fiduciary duty, which “entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.” Krohn, 173 F.3d at 548; see also MuV bins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir.1994) (noting that “when a plan administrator speaks, it must speak truthfully”).
305 F.3d at 454-55.
The majority dismisses under Rule 12(b)(6) the very claim that the referenced quotation from James found explicitly authorized by Sprague. First, it finds Sprague distinguishable because the letters at issue were from MetLife and not GM. (Maj. Op. at 572-73.) But James specifically notes that the breach of duty may be committed by an employer or plan administrator, James, 305 F.3d at 455, (here, MetLife) and does so for the obvious reason — a breach of duty claim may be stated against whatever entity is serving as a fiduciary to the plan. Second, the majority finds that plaintiffs fail to state a claim because at the time MetLife sent the letters promising benefits, they were true. (Maj. Op. at 572-73.) But the letters were only true in part. They omitted any reference to GM’s right to change the Plan terms. The majority’s approach ignores the conclusion in James that a plan administrator (MetLife), acting as a fiduciary, could not on its own initiative provide inaccurate or misleading information to the plaintiffs concerning their (continuing life insurance) benefits simply because the Plan and SPDs circulated (to GM salaried employees and retirees) included a reservation-of-rights clause. James, 305 F.3d at 454-55. James teaches that this is true because fiduciary duties entail “not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.” Id.[1]
*578 Based on these authorities, the plaintiffs stated a plausible claim for breach of fiduciary duty under § 1132(a)(3) that should not have been dismissed under Rule 12(b)(6). Section 1132(a)(3) is “broad enough to cover individual relief for breach of a fiduciary obligation.” Vmity Corp., 516 U.S. at 510, 116 S.Ct. 1065. Accordingly, I would reverse the dismissal of this claim so that the parties can further develop the facts, including MetLife’s contention that it did not act in a fiduciary capacity when it sent the written notices to the retirees. See Pegram v. Herdrich, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (noting proper inquiry is whether person or entity performed a fiduciary function when taking action subject to complaint); Hamilton v. Carell, 243 F.3d 992, 997 (6th Cir.2001) (noting fiduciary status is generally a question of fact although it may be a question of law if facts are undisputed).
II. Promissory Estoppel
The promissory estoppel claim, aimed at requiring MetLife to fulfill the promise stated in the notice letters — to provide the retirees with continuing life insurance benefits for the duration of their lives — is likewise viable and should be permitted to proceed. In this circuit we treat the theories of promissory estoppel and equitable estoppel interchangeably, and under certain circumstances, a plan participant may state an ERISA claim for benefits under either theory. See Sprague, 133 F.3d at 403 & n. 13 (citing Armistead v. Vemitron Corp., 944 F.2d 1287, 1298 (6th Cir.1991)). Estoppel principles ordinarily cannot be employed to vary the terms , of unambiguous plan documents, but they can be invoked if plan provisions are ambiguous. See Sprague, 133 F.3d at 404.
Whether the Plan documents are clear and unambiguous is an objective inquiry. See Smiljanich v. Gen. Motors Corp., 302 Fed.Appx. 443, 448-49 (6th Cir.2008) (affirming judgment in favor of plaintiff on equitable estoppel theory). Having reviewed the Plan documents in this way, I find patent ambiguity in the language used to inform the salaried employees and retirees about the duration of their continuing life insurance benefits. See id.
The Plan administered by GM and Met-Life did not consistently inform employees and retirees whether their continuing life insurance benefits vested for life. To be sure, GM reserved a general right to amend, modify, suspend, or terminate the Plan in § 3.04 of the Plan, but the Plan provision more specific to continuing life insurance benefits was found in § 4.02. In 1987 and 1990, the Plan stated in § 4.02 that life insurance benefits would remain in effect until the death of the employee, subject to GM’s reserved right to modify or discontinue the Plan. Yet, MetLife did not convey the entirety of this Plan language when it sent the notice letters to the retirees in the 1987 to 1990 time period. MetLife’s notices stated only that the continuing life insurance benefits will remain “in effect, without cost to you, for the rest of your life” or “will remain in effect for the rest of your life.” MetLife did not inform the retirees that GM reserved the right to change the benefits.
Later versions of § 4.02 in the Plan documents issued in 1993,1997, 2000, 2001, and 2005 dropped the “subject to” language referring to GM’s reserved right to modify or discontinue the Plan. During those years, § 4.02 expressly notified employees and retirees that continuing life insurance benefits would remain in effect until their deaths. Because “[wjelfare benefits vest, if at all, based on the terms of the Plan,” Price v. Bd. of Trustees of Indiana Laborer’s Pension Fund, 707 F.3d 647, 651 (6th Cir.2013), this change in Plan terminology was significant. Reading § 4.02 in conjunction with MetLife’s *579 written notices, the retirees reasonably could have believed that their continuing life insurance benefits would remain in effect for the duration of their lives and detrimentally relied on that understanding, even though their understanding may have been erroneous in light of GM’s general reserved right to modify or terminate the Plan.
These facts distinguish this case from Sprague, where “GM never told the plaintiffs that their [health insurance] benefits were vested or fully paid-up.” Sprague, 133 F.3d at 404 (citing Musió v. Am. Gen. Corp., 861 F.2d 897, 907 (6th Cir.1988)). Here, § 4.02 promised lifetime benefits without any reservation of rights language in that section in the five Plan documents issued from 1993 through 2005. In 1987 and 1990, § 4.02 had included a reservation of the right to modify or discontinue the benefits but that language was removed for the next fourteen years. Only in 2007 did the Plan change § 4.02, adding language that benefits would continue until the death of the employee “or as otherwise modified at a later date.” The “later date” arrived in 2009, when GM reduced the retirees’ continuing life insurance benefits to a flat sum. Consequently, the ambiguity apparent in the Plan language from 1987 to 2009 compels me to conclude that promissory estoppel may be a viable theory of recovery for these plan participants.
The plaintiffs adequately pled the elements of a promissory estoppel claim. See Sprague, 133 F.3d at 403 (citing Armi-stead, 944 F.2d at 1298). As to the first element, they alleged that MetLife’s unqualified statement in the written notices — that plaintiffs’ continuing insurance benefits would remain in effect for life— constituted a representation of material fact, and that MetLife failed to disclose that GM was continuing to make premium payments to MetLife to keep the plaintiff’s continuing life insurance benefits in force. Plaintiffs alleged as to the second element that MetLife received copies of the various versions of GM’s Plan and SPDs yet failed to convey the true facts accurately to the plaintiffs. Whether the plaintiffs could ultimately prove that MetLife intended to deceive them or acted with gross negligence amounting to constructive fraud would remain to be seen, see Crosby v. Rohm & Haas Co., 480 F.3d 423, 431 (6th Cir.2007), but our precedent confirms a prior successful prosecution of a similar claim. See Smiljanich, 302 Fed.Appx. at 449-51 (affirming judgment for plaintiff on estoppel claim where plaintiff proved that GM acted with gross negligence in making representations about Plan).
With regard to the third and fifth elements, the plaintiffs adequately alleged that they reasonably believed MetLife intended for them to act upon its representation in the notice letters and that they reasonably relied on MetLife’s representation to their detriment in retirement and estate planning. Taking the facts favorably to the plaintiffs, their reliance on MetLife’s notice letters and the Plan language of § 4.02 as in effect between 1993 and 2007 was reasonable and justifiable. See id. at 450. Finally, as to the fourth element, plaintiffs alleged that they were unaware of the true facts and for purposes of Rule 12(b)(6), we must accept that allegation as true.
The plaintiffs’ case is strikingly similar to the situation presented in Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76 (2d Cir.2001). There the employer issued SPDs prior to 1987 that appeared to vest life insurance benefits for the lifetimes of eligible retirees without reserving a right in the employer to reduce or eliminate the insurance. Id. at 79-80. In subsequent years, the employer issued other plan documents and SPDs; some reserved the right to reduce or eliminate life insur- *580 anee benefits, while others were ambiguous on the point. Id. at 80-81. Ultimately, the employer dramatically reduced its retirees’ life insurance benefit to a flat amount, and the retirees sued. Id. at 81. The Second Circuit reversed summary judgment for the employer, holding that the plaintiffs had pointed to specific written language, primarily in the pre-1987 SPDs, that could reasonably be interpreted as the employer’s promise to vest the retirees’ life insurance benefits. Id. at SB-84. Here the plaintiffs alleged that GM’s Plan documents contained a similar promise and those documents, when combined with MetLife’s written notice letters, misled the plaintiffs into believing that life insurance was a lifetime benefit. They also allege that they reasonably relied on that promise.
In this case the Plan terms are ambiguous concerning two key issues: whether the retirees’ continuing life insurance benefits remained in effect until death; and, whether MetLife informed the retirees that their benefits remained in effect until death, without warning them that the Plan reserved to GM the right to modify the Plan. Accordingly, I conclude that the plaintiffs alleged sufficient facts to warrant further development of the promissory estoppel claim in discovery. The claim should not have been dismissed under Rule 12(b)(6). In the event the plaintiffs ultimately were to prevail on this estoppel claim, § 1132(a)(3) would provide authority for the district court to place the retirees “in the same position [they] would have been in had the representations been true.” CIGNA Corp. v. Amara, — U.S. -, 131 S.Ct. 1866, 1880, 179 L.Ed.2d 843 (2011) (internal quotation marks omitted).
Our precedent makes clear to me that the breach of fiduciary duty and promissory estoppel allegations state claims upon which relief may be granted and should not be dismissed under Rule 12(b)(6). I agree with the majority that the district court properly dismissed the plaintiffs’ remaining claims. Therefore, I would affirm in part, reverse in part, and remand the case for further proceedings.

. Moreover, Sprague's rejection of the ERISA claims brought by GM retirees related to their health insurance benefits does not control our decision here because "Sprague considered whether a plan administrator must provide unrequested information, not whether an administrator may mislead when providing information.” See Gregg, 343 F.3d at 845.